[Civ. No. 22757. Second Dist., Div. Two. July 29, 1958.]

THE PEOPLE, Respondent, v. CHARLES R. WARFEL, Appellant.

Gendel & Raskoff for Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann, James C. Maupin and Joe J. Yasaki, Deputy Attorneys General, for Respondent.

ASHBURN, J.—Appeal from judgment awarding to the state recovery from an assignee for benefit of creditors of interest and penalties upon certain tax obligations, which interest and penalties accrued after the assignment. The taxes in question became due and payable before the assignment in each instance,; the assignee paid the principal amount of each, together with all interest and penalties accrued to date of assignment; he refused to pay any interest or penalty for any subsequent period. Hence this lawsuit and recovery by the state.

Appellant Warfel is assignee under two common law assignments. One of them was made by Pacific Coast Tank and Manufacturing Company on September 17, 1953, at which time it was obligated to the state for taxes under the Sales and Use Tax Law upon which interest and penalties had become payable. Paramount Steel Corporation made its assignment on April 29, 1950, it then being delinquent upon certain taxes, interest and penalties under the Sales and Use Tax Law, also upon certain unemployment insurance contributions due under the Unemployment Insurance Code.

As stated, the assignee paid everything due to the state by

way of tax, penalties and interest on the day of each assignment, but, claiming that no further interest or penalties could accrue subsequent to assignment because of insufficiency of assets to pay creditors in full, he refused to make any further payment. The court rendered judgment for the state for the aggregate amount of interest and penalties which became due after date of assignment in each instance.

The facts are not in dispute and counsel stipulated below: ''That the assignor of defendant in each cause of action was insolvent and after the payment of dividends to creditors by the assignee no surplus remained for the benefit of the assignors in either cause of action.'' Also: ''That the only issue for decision presented to the Court is whether the plaintiff is entitled to collect interest and penalties accruing subsequent to the date of the assignment for the benefit of creditors in the respective causes of action.''

Section 6591, Revenue and Taxation Code, which is found in the same part of division 2 as section 6756, provides that nonpayment of any tax when due shall entail a penalty of 10 per cent of amount of tax, plus interest at one-half of 1 per cent per month from date when the tax became payable ''until the date of payment.''

Section 6756 of the same code provides: ''The amounts required to be paid by *any person* under this part *together with interest and penalties* shall be satisfied first in any of the following cases: (a) Whenever the person is insolvent. (b) Whenever the person makes a voluntary assignment of his assets. . . .

''This section does not give the State a preference over any recorded lien which attached prior to the date when the amounts required to be paid became a lien.

''The preference given to the State by this section shall be subordinate to the preferences given to claims for personal services by Sections 1204 and 1206 of the Code of Civil Procedure.'' (Emphasis added.)

Section 6005 defines ''person'' as including any ''assignee for the benefit of creditors.''

Section 1113 Unemployment Insurance Code says that any employer who fails to pay any contribution required of him within the time specified shall become liable for interest on same at the rate of one-half per cent per month ''from and after the date of delinquency until paid.''

Section 1701 of the same code: ''The wage earner and employer contributions required to be paid by any employing

unit under this division, together with interest and penalties, shall be satisfied first in any of the following cases: (a) Whenever the employing unit is insolvent. (b) Whenever the employing unit makes a voluntary assignment of its assets.'' Section 1702 says that the preference given by section 1701 does not apply to any recorded lien which attached prior to the time when the required contribution became a lien, or to preferences given to claims for personal services by sections 1204 and 1206, Code of Civil Procedure.

For present purposes the provisions of the two codes appear to be substantially identical, and broadly speaking the preference afforded by the statute does not apply to preexisting liens (see *People* v. *Biscailuz,* 95 Cal.App.2d 635, 642 [213 P.2d 753]; *Durkin* v. *Durkin,* 133 Cal.App.2d 283, 286 [284 P.2d 185]); but the present case does not present any problem of priority between liens, only the question of whether the state's right to collect interest and penalties in preference to other creditors ceases with the fact of assignment and upon its date.

The meaning of sections 6756 and 1701, *supra,* seems clear upon their face, but appellant would read into the phrase ''together with interest and penalties'' an implied condition that such items must accrue before the making of an assignment in order to have preferential status.

In this state a tax obligation is not a mere debt (*Courtney* v. *Byram,* 54 Cal.App.2d 769, 771 [129 P.2d 721]); it occupies a higher status, that of a governmental exaction which overrides private contracts and liens whenever the Legislature has expressly or impliedly so declared. ''By statutory provision, as indeed by the harsh law of necessity, taxes have been made a first lien upon property. They are a primary obligation of the citizen, and the flow of this 'life blood of government' may not be interrupted. Generally, therefore, the obligation to pay taxes is superior to the obligation of private debts.'' (*Courtney* v. *Byram, supra,* p. 772.)

That this state has not recognized any cessation of interest under circumstances such as presented by an assignment for benefit of creditors is attested by *People* v. *Richardson,* 37 Cal.App.2d 275 [99 P.2d 366]. While Bank of San Pedro was being liquidated by the Banking Department, certain franchise taxes accrued and were not paid. The state sued and recovered judgment. The Superintendent of Banks appealed, urging three grounds for reversal, the last of which

404

presented the question ''whether interest and penalties were chargeable during the period of operation by the conservator.'' (P. 278.) The court said, at page 279: ''As to the third question stated by appellant, the argument is that since the affairs of the bank were *in custodia legis* the judgment erroneously includes interest and penalties on the unpaid tax. . . . Here the statute is plain. Section 24, subdivision (c), Deering's Gen. Laws, Act 8488, reads: 'If the tax imposed by this act (whether determined by the commissioner or the taxpayer) or any installment or portion thereof is not paid on or before the date prescribed for its payment, there shall be collected as a part of the tax interest upon such unpaid amount at the rate of six per cent per year from the date prescribed for its payment until it is paid.' The answer to appellant's inquiry as to interest is found in the statute; hence, authorities from other jurisdictions condemning the practice of charging interest are not controlling.'' This case is highly persuasive of the conclusion that the statutes here under consideration mean just what they say on their face, and that they carry no latent exception as to post-assignment interest and penalties. ''The priority need not be declared in express terms. It is enough if the intent to postpone contract liens appear by reasonable inference from the provisions of the act. But the authorization for displacing the earlier lien must, under all the decisions, be found in the statute.'' (*Guinn* v. *McReynolds*, 177 Cal. 230, 232 [170 P. 421].)

The bases upon which such interest and penalties are disallowed in some jurisdictions are (a) that interest is a charge for delay in payment and in the case of an assignment for creditors any delay is due to the act of the law, the property being *in custodia legis*; that the reason for interest therefore ceases and with it the obligation to pay same; (b) that equality is equity and in insolvency proceedings that maxim brings preferred and nonpreferred creditors onto a plane of equality.

Concerning the first proposition, our courts have recognized it to be a general rule of liquidation proceedings ''that one creditor is not entitled to payment of interest on his claim in receivership, bankruptcy, or other form of liquidation, *after* the commencement thereof, where the assets are not sufficient to pay the principal of all claims in full. (See *Greva* v. *Rainey*, 2 Cal.2d 338 [41 P.2d 328]; Glenn on Liquidation, secs. 488, 510.)'' (*In re Pacific Coast Bldg.-Loan Assn.*, 15 Cal.2d 134, 147 [99 P.2d 251].) This rule was

stated and applied in a case where "[a]s to interest the statute is silent." (P. 146.)

The cited case of *Greva* v. *Rainey*, 2 Cal.2d 338 [41 P.2d 328], likewise dealt with a statute which was silent on the subject of interest during liquidation. The general rule was stated to be "that after property of an insolvent is *in custodia legis* interest thereafter accruing will not be allowed, . . ." (P. 343.) But the court held it not applicable where assets are sufficient to pay all claims in full, saying further that the general rule exists "not because the claims were considered to have lost their interest-bearing quality, but because in the great majority of cases the assets were insufficient to pay both the principal and the interest which would otherwise become due [p. 343]; . . . all creditors are entitled to equal consideration except where the statute expressly provides otherwise, and then only to the extent provided." (P. 346.) Applied to the case at bar this means that the taxes have not lost their interest-bearing quality, and that, as the statute has expressly provided a preference as to interest and penalties as well as principal, the statute governs and there is no room for implied conditions or qualifications.

It was said in *California Loan etc. Co.* v. *Weis*, 118 Cal. 489, 492 [50 P. 697], a case which was concerned with priority of a tax lien: "The power of the legislature to make the lien of taxes paramount to all other liens upon the land, so that when sale is made the purchaser takes title freed from encumbrance, is not questioned. 'It is within the constitutional power of the legislature to enact that the purchaser at tax sales shall acquire a new, independent, and unencumbered title.' (Black on Tax Titles, § 231.) 'It is not only competent,' says Judge Cooley, 'for the state thus to charge the land with the tax, but the legislature may, if it shall deem it proper or necessary to do so make the lien a first claim on the property, with precedence of all other claims and liens whatsoever, whether created by judgment, mortgage, execution, or otherwise, and whether arising before or after the assessment of the tax.' (Cooley on Taxation, 445.)" At 493: "As this matter, the power being conceded, depends for its determination entirely upon statutory enactment, adjudications in sister states will be of little value unless based upon identical laws."

This last remark is pertinent to the case of *Pavone Textile Corp.* v. *Bloom*, 302 N.Y. 206 [97 N.E.2d 755], upon which appellant principally relies. The problem was thus stated:

"In this proceeding, in which the assignor made a general assignment for the benefit of creditors, the only issue presented to us for determination is whether the respondents, the United States of America and the State of New York, are entitled to interest on their tax claims to the date on which the assignment was filed or to the date of payment of such claims. The claim of the United States is for social security and withholding taxes, and that of New York for unemployment insurance taxes." And the essential ruling: "The general rule is well settled that creditors are not entitled to post-assignment interest where the proceeds are insufficient to pay all creditors in full, because the 'delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate'; this general rule applies as between preferred and unpreferred creditors." (P. 755.) The court, as appears from the above quotation, applied the *in custodia legis* concept, also the federal bankruptcy rule and the federal priority statute which was said to incorporate by implication the bankruptcy rule. This disallowance of post-assignment interest also rests upon an interpretation of a local statute whose terms are substantially different from ours. The United States Supreme Court affirmed the Pavone ruling *sub nom., United States* v. *Bloom,* 342 U.S. 912 [72 S.Ct. 357, 96 L.Ed. 682], by mere reference to *City of New York* v. *Saper,* 336 U.S. 328 [69 S.Ct. 554, 93 L.Ed. 710]. That case holds that there can be no interest allowed after date of bankruptcy upon a government claim for taxes; this was said to be "a fundamental principle of the English bankruptcy system which we copied." (P. 330.)

Not only was the statute involved in Pavone, *supra,* substantially different from ours, but it also appears that the court there dealt with a statutory assignment for creditors, which fact lay back of the statement that any delays in administration were those of the law. At bar we deal with common law assignments; they do not in any sense place the property *in custodia legis.* The administration of such an assignment is not subject to court control except through a plenary equity case. " [In receiverships] the estate is in the hands of a court-appointed and supervised individual acting as an arm of the court. Such is not true of the common law assignee. No matter how salutary the practice of assignments for creditors, it must be conceded that as an individual engaged in private enterprise, the assignee is for practical purposes outside the control and supervision of the court." (*Division of Labor*

*Law Enforcement* v. *Stanley Restaurants, Inc.* (9th Cir.), 228 F.2d 420, 424.) Authorities resting upon the *in custodia legis* theory are not applicable here. However, we do not wish this discussion of statutory and common law assignments to be understood as indicating that our decision rests upon that narrow distinction.

The argument that equality is equity and that this is true of both preferred and nonpreferred claimants in an insolvency proceeding does not appeal to us as sound when urged with respect to a statute which expressly declares the state to have preference in an insolvency situation. ▮ The purpose of a preference is protection of the holder against the claims of less fortunate creditors in those situations where the assets are insufficient to pay all the creditors in full—the ordinary insolvency proceeding. To say that the preference declared by statute in case of insolvency, or the making of an assignment for creditors, ceases to prevail as soon as such an assignment is made is to emasculate the statute and render its declaration of preference meaningless. Concerning the application of the "general rule" to such a situation the Fifth Circuit Court of Appeals said, in *First Nat. Bank* v. *Ewing,* 103 F. 168, 190: "It is further contended by the appellees that in no event should interest, penalties, and costs accruing upon the claim for taxes be allowed. In *Thomas* v. *Car Co.,* 149 U.S. 116, 117 [13 S.Ct. 833, 37 L.Ed. 671], it was said by the court: 'As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law. It is a necessary incident to the settlement of the estate. [Citations.] We see no reason in departing from this rule in a case like the present, where such a claim would be paid out of moneys that fall far short of paying the mortgage debt.'

"The general rule announced by the supreme court is applicable to cases where the fund is to be shared by creditors without liens, or by those having liens of equal and common rank. But where there are claims of several classes, with liens of different priorities, the holders thereof are entitled to interest down to the date of the decree. [Citations.] As we have shown, the lien for taxes is superior to all other claims, except for judicial costs, and practically constitutes a class of its own. There being in the registry of the court more than a sufficient amount to pay the state and municipal taxes

and judicial costs, the accrued interest, penalties, and costs should be allowed." *American Iron & S. Mfg. Co. v. Seaboard A.L.R. Co.*, 233 U.S. 261, 267 [34 S.Ct. 502, 58 L.Ed. 949]: "[P]rincipal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full. . . . For, manifestly, the law does not contemplate that either the debtor or the trustees can, by securing the appointment of receiver, stop the running of interest on claims of the highest dignity." See also *Marshall v. New York*, 254 U.S. 380, 385-386 [41 S.Ct. 143, 65 L.Ed. 315]; *American Surety Co. v. Carbon Timber Co.*, 263 F. 295, 303.

We conclude that the statutes governing this case express a legislative intent that these tax obligations shall be preferred as to principal, interest and penalties in all cases of assignment for benefit of creditors; that the right to interest and penalties is not cut off by the mere fact of assignment, but continues as a prior right in the state until all principal, interest and penalties have been actually paid.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied August 22, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.