ANTHONY AND DELIA TRUJILLO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9856-76. Filed August 3, 1977.

Anthony Trujillo, pro se.[1]
*Stephen B. Zorick, Jr.,* for the respondent.

[1] William R. Nicholas, Thomas G. Bost, and Stephen L. Jones, all California attorneys, were granted leave to file an opening brief and a reply brief amicus curiae in support of petitioners' motion for summary judgment. Petitioners have adopted the briefs.

OPINION

DAWSON, *Judge:* Respondent determined a deficiency of $22.78 in petitioners' Federal income tax for the calendar year 1975.

This matter is before the Court on a motion for summary judgment filed by petitioners April 7, 1977, pursuant to the provisions of Rule 121, Tax Court Rules of Practice and Procedure. The parties agreed to submit the motion for decision without oral argument. Accordingly, respondent filed his original brief on May 31, 1977. Petitioners filed a statement with the Court on June 2, 1977, adopting the position taken in the amicus curiae brief filed on that date. Respondent filed his reply brief on June 30, 1977, and the amicus curiae reply brief was filed on July 6, 1977. No material facts are in dispute.

The only issue presented for decision is whether petitioner's payments to the California State Unemployment Compensation Disability Fund are deductible either as (1) State income taxes within the meaning of section 164(a)(3) of the Code,[2] or (2) an ordinary and necessary business expense under section 162(a), or (3) an expense incurred for the production or collection of income under section 212.

Petitioners are husband and wife whose legal residence was Tustin, Calif., at the time their petition was filed herein. They previously had filed a timely joint Federal income tax return for the calendar year 1975 with the Internal Revenue Service Center at Fresno, Calif.

Anthony Trujillo (herein referred to as the petitioner) was employed within the State of California during 1975 by TASK Corp., a for-profit corporation incorporated under the laws of the State of Pennsylvania. His employer paid him wages in excess of $9,000 during the year 1975 in exchange for services rendered.

Pursuant to the requirements of sections 984–986 of the California Unemployment Insurance Code, 1 percent ($90) of the first $9,000 of petitioner's 1975 wages was withheld at the source by his employer and paid over to the Department of Human Resources Development of the State of California for

---

[2] All statutory references herein pertain to the Internal Revenue Code of 1954, as amended during the year in issue, unless otherwise indicated.

deposit in the California State Disability Insurance Fund. Petitioners subsequently claimed the withheld $90 as an itemized deduction on their joint Federal income tax return for 1975. Respondent disallowed the claimed deduction.

Petitioner argues that the enforced collection of the withheld funds by the State of California constitutes a valid exercise of the State's taxing authority so that his payment of the sum is actually the payment of a State tax deductible under section 164(a)(3). Notwithstanding the existence of Rev. Rul. 75–149, 1975–1 C.B. 65, which holds that such payments are not deductible under section 164(a)(3), petitioner contends that our opinion in *McGowan v. Commissioner*, 67 T.C. 599 (1976), concerning a similar Rhode Island statute and corresponding Rev. Rul. 75–148, 1975–1 C.B. 64, indicates that respondent's determination is erroneous. Respondent, on the other hand, asserts that the rationale at the heart of our holding in *McGowan* is not applicable here because the California statute is significantly different from the Rhode Island statute. He contends that the California statute pertains to "completely optional," not mandatory, payments which fail to meet the requirement in section 1.164–3, Income Tax Regs., that payments result from a tax "imposed" upon the populace. Moreover, respondent argues that our usage of State court interpretations regarding the nature of such exactions in *McGowan* was wrong. Instead, it is urged that we promulgate a Federal definition of "taxes" for the purposes of applying section 164, using section 1.164–3 of the regulations as a cornerstone.

We can find nothing in the California statutory framework or case law which supports respondent's position. Accordingly, we hold that petitioner's compulsory contribution to the California Disability Insurance Fund qualifies for deduction under the plain language of section 164(a)(3) of the Code as a State income tax. Respondent's reliance upon a proposed Federal standard is without merit. In addition, we think Rev. Rul. 75–149, 1975–1 C.B. 65, is invalid because it is premised on an erroneous interpretation of the California statutes requiring the contribution in issue.[3]

---

[3] The "groundhog" has emerged again only to see the foreboding shadows of millions of California employees seeking equal treatment with Rhode Island employees. *McGowan v. Commissioner*, 67 T.C. at 611.

Section 164(a)(3) permits taxpayers to deduct "State and local, and foreign, income, war profits, and excess profits taxes" for the taxable year within which such taxes are paid or accrued. Section 1.164–3, Income Tax Regs., sets forth the following definition:

For purposes of section 164 and §1.164–1 to §1.164–8, inclusive—

(a) *State or local taxes.* A State or local tax includes only a tax imposed by a State, a possession of the United States, or a political subdivision of the foregoing, or by the District of Columbia.

The State of California has operated and supervised a disability insurance system since 1946 which is funded entirely by contributions deducted from the wages of nonexempt employees or from employer contributions made on behalf of the employees. Cal. Unemp. Ins. Code sec. 2901 (West 1972). Certain classes of employees are exempt from payment, most notably State employees. See Cal. Unemp. Ins. Code secs. 601–622 (West 1972). All other employees must contribute to the State plan unless their employer establishes a suitable private disability plan which meets State requirements. See Cal. Unemp. Ins. Code secs. 3251–3254 (West 1972). Contributions are placed in the Unemployment Compensation Disability Fund, which is a separate fund in the State treasury. Cal. Unemp. Ins. Code sec. 3001 (West 1972).

There can be no question that direct contributions by employees to such a disability insurance system are valid income tax payments deductible under section 164(a)(3). We need look no farther than our recent opinion in *McGowan v. Commissioner, supra* at 610, for authority because the State disability insurance systems of Rhode Island and California are substantially similar. Respondent argues that payments in California do not qualify for deduction because they allegedly are merely "optional," not "mandatory" as in Rhode Island. That position is untenable. The only "option" presently existing in the California system is the individual employee's option to select his employment from three categories of employers: (1) Those exempt from tax; (2) those collecting the tax from employees at the source and paying it over to the State; and (3) those paying their employees' taxes. Different Federal tax consequences attach to each of those choices. Once the initial employment election is made, however, the employee has no "option" to alter the attendant

Federal tax consequences short of changing jobs. In any event, this is not the type of "option" that prohibits a revenue-producing statute from being deemed "compulsory" because virtually all employees are required to be covered in some way and those opting for each type of employment receive uniform income tax treatment.

Simply stated, the State of California has chosen to exercise its constitutional police powers in a manner somewhat different from the State of Rhode Island, but since that exercise of governmental discretion is a valid one, we cannot sanction disparate tax treatments for similar withholdings. The State of California has chosen to exempt certain groups from payment, often coupled with a commensurate loss of benefits. See, e.g., Cal. Unemp. Ins. Code sec. 2902 (1972) (exemption on religious grounds). With the exception of a few categories of employees, however, no private employees are exempted from direct payment of the tax to the State fund unless they qualify for similar benefits under a private plan. Some form of coverage is mandatory, even though California has elected to shift some of the administrative burden to approved, cooperative employers. This exercise of governmental discretion, too, is patently valid and does not serve to alter either the comprehensive nature of the plan or the absolute requirement of contributions to the system.

The drafters of the California Unemployment Insurance Code recognized that the exactions discussed herein are mandatory in nature for they stated in section 100 of that Code that:

> The Legislature therefore declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the *compulsory* setting aside of funds to be used for a system of unemployment insurance * * * [Emphasis supplied.]

Furthermore, the Supreme Court of the United States commented in *Geduldig v. Aiello*, 417 U.S. 484, 487 (1974) that:

> California's disability insurance system is funded entirely from contributions deducted from the wages of participating employees. Participation in the program is *mandatory* unless the employees are protected by a

voluntary private plan approved by the State. [Emphasis supplied. Fn. ref. omitted.]

Although that decision neither sanctioned nor invalidated California's system, it did uphold the State's exercise of discretion in excluding certain types of disability from coverage under the system. *Geduldig v. Aiello, supra* at 494–495. Our conclusion that the contributions in issue are "mandatory" or "compulsory" is thus bolstered by the independent conclusions reached by third party examiners of California's system.

Rev. Rul. 75–149, 1975–1 C.B. 65, disallows deductions for such contributions by means of the following statement:

The word "taxes" has been defined as an enforced contribution, exacted pursuant to legislative authority in the exercise of the taxing power, and imposed and collected for the purpose of raising revenue to be used for public or governmental purposes. See Rev. Rul. 71–49, 1971–1 C.B. 103.
\* \* \*

Amounts withheld from the wages of employees for contribution to the California disability fund for indemnity coverage under the California Unemployment Insurance Code do not qualify as any of the types of taxes specified in section 164(a) of the Code and are not paid or accrued in carrying on a trade or business because they are incurred to provide indemnity coverage for loss of wages due to unemployment resulting from nonoccupational hazards rather than from hazards arising from business contingencies. Therefore, these amounts are not deductible by employees under section 164(a). Such amounts are nondeductible personal expenses under section 262. See Rev. Rul. 71–73, 1971–1 C.B. 52, which held that similar employee contributions under the New York Workman's Compensation Law are nondeductible personal expenses.

Respondent has carefully avoided ruling that such contributions are not State "taxes," but instead emphasizes that they "do not qualify as any of the types of taxes specified in section 164(a)." Rev. Rul. 75–149 reflects an abrupt reversal of position which respondent made in 1975 with respect to several State systems, including the Rhode Island system discussed in *McGowan v. Commissioner,* 67 T.C. 599, 608–609 (1976). Respondent's prior position, set forth in I.T. 3966, 1949–2 C.B. 27, ruled that such contributions constituted "taxes" which were deductible under section 23(c)(1), I.R.C. 1939, the forerunner of section 164. That ruling noted that State court decisions deemed such payments to be "taxes." Recent California cases have perpetuated that classification. See, e.g., *State v. Stewart,* 272 Cal. App.2d 345, 77 Cal. Rptr.

418 (4th Dist. Ct. App. 1969); *People v. Warfel,* 162 Cal. App.2d 400, 328 P.2d 456 (2d Dist. Ct. App. 1958); *In re Hacker-Byrnes Corp.,* 96 F.Supp. 349 (S.D. Cal. 1951). Moreover, we note that under the authority of Cal. Unemp. Ins. Code sec. 1703.5 (1972), the director of the California Human Resources Board is authorized to file a State tax lien for unpaid contributions owned the fund. In our judgment respondent's reversal of position is based on faulty premises which, since they were discussed fully in *McGowan,* will not be dredged up again here. See *McGowan v. Commissioner, supra* at 608–611. Respondent's additional contention that section 164 of the Code has changed materially since the earlier ruling was issued, such that it now fails to encompass the "taxes" in issue, is erroneous. We have reviewed all cited authority for that point and find absolutely no indication of support for the position taken. See H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 125, 171–172; S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part 2) 505, 557. Respondent's reference to our holding in *Cox v. Commissioner,* 41 T.C. 161 (1963), concerning whether turnpike tolls constitute State "taxes," is misplaced because the exactions herein are distinguishable from those.

In view of our conclusion that the contribution made by the petitioner to the California disability insurance fund is deductible as a State "income" tax under section 164(a)(3), it is not necessary for us to consider the deductibility of the contribution under section 162 or section 212.

Accordingly, the petitioners' motion for summary judgment will be granted.

> *An appropriate order and decision will be entered.*