PHILLIP K. FIFE AND KATHLEEN M. FIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6441–78.     Filed January 2, 1980.

*Phillip K. Fife,* pro se.
*Darwin Thomas,* for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1974 in the amount of $85.30. The two issues presented for decision are (1) whether petitioners are entitled under section 164 of the Code[1] to a deduction for an amount paid as a "utility users tax," and (2) whether under section 162, petitioners should be allowed a deduction for the cost of certain morning, evening, and weekend meals.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts together with the attached exhibits is incorporated herein by this reference.

Petitioners' Federal income tax return for 1974 was timely filed with the Fresno Service Center. At the time of filing their petition herein, petitioners resided in Seal Beach, Calif.

During 1974, the city of Seal Beach, under the authority of article 71 of the California constitution (which provided general powers to chartered cities), levied a "utility users tax" (secs. 22–60 through 22–76 of ch. 22 of the Seal Beach Municipal Code) which amounted to 5 percent of the charges for gas, electric, and telephone utilities used by residents of that community. The tax was not exacted on charges for certain coin-operated phones, for mobile land and marine telephone service, and for interstate telephone calls. Proceeds of the tax went into the general fund of the city.

Petitioners paid, in 1974, a utility users tax amounting to $41.24. They deducted this amount on their income tax return, together with $508.60 general sales tax and $958.41 in real estate taxes.

The Seal Beach utility users tax was separate and distinct from what is commonly referred to as the California sales tax. In Orange County, where Seal Beach is located, the State sales tax consisted of 2 parts. The first was a sales tax (combined with a use tax) on tangible personal property imposed after March 31, 1974, at the rate of 4¾ percent (Cal. Rev. & Tax. Code secs. 6051 et seq. and 6201 et seq. (West 1970). The second component was a 1¼-percent local sales and use tax imposed by the county under State authority (Cal. Rev. & Tax. Code secs. 7200 et seq. (West 1970)). Except for five counties where an additional one-half percent was imposed, the State sales tax rate was a uniform 6 percent throughout California. The entire tax was collected by the State, which then remitted to each county its share.

Phillip K. Fife (hereinafter petitioner) is an attorney who during 1974 practiced law with Payson, Epstein & Fife, a partnership. When petitioner had to meet a client or prospective client early in the morning or in the evening, he would frequently purchase his breakfast or dinner at a restaurant in the vicinity of the meeting or near his office. Petitioner paid $300 for such meals for himself in 1974 and deducted that

amount on his return. The $300 figure does not include the cost of petitioner's lunches but only those meals which he bought when working unusual hours. Nor does the $300 include any entertainment expenses such as the cost of meals which petitioner bought for clients or investigators. None of the meals were eaten while petitioner was away from home overnight.

## OPINION

Section 164(a) provides for the deduction of various State and local taxes, including real property and general sales taxes.[2] Petitioners contend that the utility users tax at issue here qualifies as a local real property tax. They argue that since charges for mobile telephone service are exempt from the tax, the tax arises only in connection with the use and occupation of real property. Citing *Trujillo v. Commissioner*, 68 T.C. 670 (1977), petitioners contend that the name given a tax by the taxing authority does not determine its deductibility. In *Trujillo*, we held that payments to the California State Unemployment Compensation Disability Fund qualified for deduction under section 164(a)(3) as a State income tax.

Section 1.164–3(b), Income Tax Regs., defines real property taxes. "The term 'real property taxes' means taxes imposed on interests in real property and levied for the general public welfare, but it does not include taxes assessed against local benefits." The regulations further describe deductible real property taxes as those "levied for the general public welfare by the proper taxing authorities at a like rate against all property in the territory over which such authorities have jurisdiction." Sec. 1.164–4(a), Income Tax Regs.

While we agree with petitioners that the fact that the utility users tax was so named does not preclude its deductibility, we do not agree that it is a real property tax. It was not imposed on an interest in real property, as required by the regulations, but was simply exacted on the use of utility services. Nor was the tax

---

[2]SEC. 164. TAXES.

(a) GENERAL RULE.—Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

    (1) State and local, and foreign, real property taxes.
    (2) State and local personal property taxes.
    (3) State and local, and foreign, income, war profits, and excess profits taxes.
    (4) State and local general sales taxes.
    (5) State and local taxes on the sale of gasoline, diesel fuel, and other motor fuels.

levied at a like rate against all property; it was levied against utility charges (not against property) at a fixed percentage. The actual tax varied from property to property. We reject petitioners' contention that the tax is deductible as a real property tax.

In the alternative, petitioners contend that the utility users tax is a deductible general sales tax. The Code defines a general sales tax as "a tax imposed at one rate in respect of the sale at retail of a broad range of classes of items." Sec. 164(b)(2)(A). The regulations provide, "A sales tax is considered to be general although imposed on sales of various classes of items at more than one rate provided that one rate applies to the retail sales of a broad range of classes of items." Sec. 1.164–3(f)(2), Income Tax Regs. However, "Except in the case of a lower rate of tax applicable in respect of * * * [items of food, clothing, medical supplies, and motor vehicles], no deduction shall be allowed under this section for any general sales tax imposed in respect of an item at a rate other than the general rate of tax." Sec. 164(b)(2)(C).

We conclude that because the utility users tax was not imposed on a broad range of classes of items, it is not deductible as a general sales tax under section 164. The tax was limited only to certian charges for gas, electricity, and phone sevice. It was not a part of the sales and use taxes which were collected by the State and applied generally to tangible personal property (which is a broad range of classes of items). Moreover, even if we were persuaded that the utility tax was part of a general sales tax, no deduction would be allowed under the language of section 164(b)(2)(C) since the utility tax is levied at a different rate. The State sales and use tax rate was 4¾ percent through most of the year in issue, and the local sales and use tax was 1¼ percent, while the utility users tax was imposed at 5 percent.

Petitioners point out that in 1974, respondent allowed a deduction for Connecticut sales tax on certain utilities in addition to the deduction provided for in the optional State sales tax tables. They contend that this allowance indicates that utilities are a broad range of classes of items. However, the Connecticut tax on certain utilities was not a separate tax, as in the instant case. The specified utilities were just a few of the many items covered by the State sales tax. All of these items were taxed at one rate, although there was a limitation on the amount of utility charges subject to the tax. Conn. Gen. Stat.

Ann. secs. 12–407(2)(i), 12–408, 12–412(c) (West 1972). The Connecticut tax code has since been amended to exempt utilities entirely from the sales tax. Conn. Gen. Stat. Ann. sec. 12–412(c)(Supp. 6 1979).

On their return for 1974, petitioners reported a miscellaneous deduction of $300 for petitioner's meals on those days when he met with clients outside of normal business hours. Ordinarily, expenses for food are about as personal as any expense can be. *Drill v. Commissioner*, 8 T.C. 902 (1947). Such personal expenses are expressly nondeductible under section 262 of the Code. See sec. 1.262–1(b)(5), Income Tax Regs.

We find that, as in *Drill v. Commissioner, supra*, the cost of petitioner's meals was a nondeductible personal expense. In *Drill*, the taxpayer was denied a deduction for the cost of evening meals at restaurants on days (3 per week, on the average) when he worked overtime. The Court in *Drill* could discern no difference between the meals occasioned by petitioner's overtime work and the lunches which he ate every day. Both were found to be essentially personal expenses and, therefore, nondeductible.[3] Petitioner has failed to prove any business purpose for these meals.[4]

Petitioner contends that the meals expense at issue is deductible because it is connected with seeking new employment. He argues that, as an attorney, he was always looking for new clients. However, whether the meetings which prevented the petitioner from eating at home were with new clients or with established clients (and the record indicates that at least some of the meetings were with established clients), the essentially personal nature of petitioner's meals remains unchanged.

The Code does provide a deduction for the cost of a taxpayer's meals while he is traveling away from home in the pursuit of a trade or business. Sec. 162(a)(2). Travel "away from home" includes only overnight trips and trips requiring sleep or rest. *United States v. Correll*, 389 U.S. 299 (1967). In spite of

---

[3] See also *Coombs v. Commissioner*, 608 F.2d 1269 (9th Cir. 1979); *Saunders v. Commissioner*, 21 T.C. 630 (1954), revd. on other grounds 215 F.2d 768 (3d Cir. 1954); *Kammerer v. Commissioner*, T.C. Memo. 1976–11; *Gunther v. Commissioner*, T.C. Memo. 1954–181.

[4] Although petitioner's testimony indicates that on occasion some of the meals might have been in the company of clients, he has not proved the number of such occasions or that business matters were discussed. Even if a business purpose were proved, petitioner has not shown that the costs of any business meals exceeded the expenditures he would have made in any event for his own personal purposes, and no deduction would have been allowable. *Sutter v. Commissioner*, 21 T.C. 170 (1953).

petitioner's arguments to the contrary, the meals at issue were not eaten while he was traveling away from home within the meaning of section 162. Although some of his meetings with clients may have required him to drive some distance from his office, none of the trips were so long as to require sleep or rest. Petitioner therefore fails to meet the "away from home" test. Accordingly, we sustain respondent's determination on this issue.

*Decision will be entered for the respondent.*