T.C. Summary Opinion 2019-9

UNITED STATES TAX COURT

ELIZABETH JACKSON SIMPSON AND GEOFFREY N. SIMPSON,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13160-16S.                    Filed May 2, 2019.

Elizabeth Jackson Simpson and Geoffrey N. Simpson, pro sese.

Victoria Z. Gu, Trent D. Usitalo, and Sandeep Singh, for respondent.

SUMMARY OPINION

LEYDEN, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated February 29, 2016, the Internal Revenue Service (IRS)[2] determined a deficiency in Mr. and Mrs. Simpson's 2013 Federal income tax of $8,517 and a section 6662(a) accuracy-related penalty of $1,703.40. After concessions by the parties,[3] the issues for decision are whether Mr. and Mrs. Simpson are entitled to deduct:  (1) $11,230 for charitable contributions; (2) $30,348.90 for various unreimbursed employee expenses; and (3) an additional $1,386 for State and local income taxes.  For the reasons stated herein, the Court holds that Mr. and Mrs. Simpson are:  (1) not entitled to deduct $11,230 for charitable contributions; (2) not entitled to deduct $30,348.90 for various

---

[1](...continued)
Revenue Code, as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings.  The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

[3]Mr. and Mrs. Simpson concede that they are not entitled to deduct $20,900 for medical, dental, and insurance premium expenses reported on Schedule A, Itemized Deductions.  The parties agree that Mr. and Mrs. Simpson are entitled to deduct $413 for tax preparation fees reported on the Schedule A before the 2% limitation under sec. 67(a).  Respondent concedes that Mr. and Mrs. Simpson are not liable for the sec. 6662(a) accuracy-related penalty.

unreimbursed employee expenses; and (3) entitled to deduct an additional $895.96 for State and local income taxes.

## Background

Some of the facts have been stipulated and are so found. Mr. and Mrs. Simpson resided in California when they timely filed the petition.

During 2013 Mr. and Mrs. Simpson lived with their son in a rented two-bedroom house in San Francisco, California. The house consisted of five rooms that totaled 943 square feet and a converted basement. Mr. and Mrs. Simpson paid for a three-line family cellular service plan and a single household cable and internet service plan.

Mr. and Mrs. Simpson owned several automobiles including: (1) a 2005 Lexus SC 430 CV; (2) a 2001 BMW X5 3.0i; (3) a 1996 GMC Sierra C150 truck (GMC truck); and (4) a 2001 Pontiac Grand AM (Pontiac).

I.    Mrs. Simpson's Employment

During 2013 Mrs. Simpson was the executive director of Success Center San Francisco (Success Center), a nonprofit organization that provides education and workforce opportunities to young people. She worked 12 to 15 hours per day. As the executive director she had a flexible work schedule. She did not have a

regular tour of duty and was not required to be in the office during a set period of time.

Mrs. Simpson was responsible for all of the operations of Success Center including fundraising, program development, volunteer management, and curriculum development. Mrs. Simpson also supervised eight employees during 2013. Those employees worked from 8:30 a.m. to 6 p.m. each day (work hours) during the five-day workweek.

As part of her job Mrs. Simpson picked up lunches served by Success Center to children; visited schools, donors, funders, foundations, and various city departments; and attended local conferences, "trainings", and seminars. She often attended five or six meetings a day outside Success Center's office. Mrs. Simpson did not maintain a contemporaneous log of the miles she drove for Success Center activities.

Mrs. Simpson also traveled away from home to attend educational and other conferences to assist her in expanding Success Center's work. As the executive director she determined where and when she traveled. Mr. Simpson or her son sometimes traveled with her to those conferences.

Success Center provided Mrs. Simpson with an office. However, after work hours and on weekends Mrs. Simpson performed work for Success Center in a

space in her and Mr. Simpson's house which they considered an office. In that space Mr. and Mrs. Simpson kept a computer, scanner, printer, desk, chair, books, landline telephone, fax machine, and television. Success Center did not require Mrs. Simpson to have a home office. Mr. and Mrs. Simpson's home was five to six miles from Success Center's office.

Success Center did not provide Mrs. Simpson with a cellular phone. She used her personal cellular phone to make phone calls as the executive director.

Success Center's personnel policy reimbursed employees for travel and other expenses on the basis of available funds. As the executive director, Mrs. Simpson determined which employee expenses were prudent and should be reimbursed on the basis of Success Center's resources. Mrs. Simpson did not seek reimbursement for any job expenses she incurred or paid during 2013.

II.     Mr. Simpson's Employment

During 2013 Mr. Simpson worked as a longshoreman for Pacific Maritime Association (Pacific) loading and unloading seafaring vessels and cargo, and he belonged to a union. The union's dispatch office was in the Fisherman's Wharf area in San Francisco. Mr. Simpson drove each day to the dispatch office to get his job assignment and then drove to the job assignment location. Mr. Simpson

used either the Pontiac or the GMC truck when he drove to the dispatch office and to the job assignment location.

A Pacific employee worked in one of two shifts: (1) 8 a.m. to 4:45 p.m. or (2) 6 p.m. to 2:45 a.m. Sometimes Mr. Simpson would work both shifts the same day. When he worked both shifts the same day, he drove from the first job assignment location back to the dispatch office, obtained his second job assignment location, and drove from the dispatch office to the second job assignment location.

Mr. Simpson testified that he maintained a contemporaneous workbook, as advised by his union, to record the locations of his job assignments and his shifts to cross-reference Pacific's records in the event his check did not reflect the hours he worked. He could not find and did not produce the 2013 contemporaneous workbook for trial. Mr. Simpson produced at trial a 2013 hour and wage detail report from Pacific that listed the dates and cities in California of his job assignments during 2013. The 2013 hour and wage detail report indicated Mr. Simpson worked both shifts on eight separate days.

The 2013 hour and wage detail report has a "description" column describing the particular work Mr. Simpson performed at that particular location (e.g., dockman, yard directing supervisor, lasher, auto driver, vessel clerk supervisor,

skilled holdman, or baggage man/porter). The 2013 hour and wage detail report also has a "travel hours" column. The only entries in the travel hours column are entries of one hour for each of the following dates with respect to the Benicia, California, location: January 17, April 10, May 19, and December 12, 2013. Mr. Simpson did not work both shifts on those days.

During 2013 Mr. Simpson also worked as an independent contractor. He worked with parolees and high risk individuals transitioning from the prison system into the community. Mr. Simpson drove to various group homes for this work.

## III. Charitable Contributions

Mr. and Mrs. Simpson owned a timeshare interest[4] that could be used at various locations, including Mexico, Las Vegas, Nevada, and Southern California. Sometime in 2013 they donated the use of their timeshare to a fundraiser for Success Center. Mr. and Mrs. Simpson also contributed (i.e., tithes and offerings) to their church in cash and by check but did not produce at trial any bank records or other receipts for such contributions that showed the dates and the amounts of

---

[4]A timeshare interest is the "[j]oint ownership or rental of property (such as a vacation condominium) by several persons who take turns occupying the property." Black's Law Dictionary 1521 (8th ed. 2004).

the contributions, nor did they retain any letter the church may have sent to them that listed the dates and amounts of the contributions.

IV.    2013 Tax Return

Mr. and Mrs. Simpson timely filed a 2013 joint Federal income tax return using a commercial tax preparation service.  On a Schedule A attached to their 2013 tax return they reported State and local income taxes of $4,319, charitable contributions of $11,230 for gifts in cash or check, and unreimbursed employee expenses of $24,968.  Mr. and Mrs. Simpson also attached a Form 2106-EZ, Unreimbursed Employee Business Expenses, to their 2013 return which reported the following:  (1) $600 for parking fees, tolls, and transportation (not including overnight travel); (2) $11,048 for travel expenses while away from home (not including meals and entertainment); (3) $9,420 for other business expenses (not including meals and entertainment); and (4) $3,900 for meals and entertainment expenses.[5]  Mr. and Mrs. Simpson did not report any vehicle information on the Form 2106-EZ.

In the notice of deficiency the IRS disallowed in full the deductions for charitable contributions and unreimbursed employee expenses.  The IRS did not

---

[5]The total meals and entertainment expense listed on the Form 2106-EZ was $7,800 before the 50% limitation under sec. 274(n)(1).

disallow the deduction for State and local income tax. In their petition Mr. and Mrs. Simpson challenged the disallowed deductions for charitable contributions and unreimbursed employee expenses.

At trial Mr. and Mrs. Simpson asserted that for 2013 they are entitled to deduct $30,348.90, an amount greater than the amount reported on the Schedule A, for the following unreimbursed employee expenses: (1) with respect to Mrs. Simpson's employment, $4,938 for business use of home expenses, $1,981.89 for cellular phone services, $1,124.30 for cable and internet services, $10,194.71 for travel expenses,[6] and $6,494 for car and truck expenses; and (2) with respect to Mr. Simpson's employment, $5,616 for car and truck expenses. At trial Mr. and Mrs. Simpson also asserted that for 2013 they are entitled to deduct an additional $1,386 for State and local income tax, for a total deduction of $5,705.

## Discussion

### I.    Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and a taxpayer bears the burden of proving it incorrect. See Rule 142(a);

---

[6]Mrs. Simpson introduced into evidence a worksheet reporting her travel expenses, including meals, as $9,881.11--$8,415.38 for travel plus $1,465.73 for meals. The worksheet contains a math error. The sum of the travel and meals figures is $10,194.71.

Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a)(1), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements.  Mr. and Mrs. Simpson have neither argued that section 7491(a) applies nor established that its requirements are met.  The burden of proof remains with them.

As the Court has observed in countless opinions, deductions are a matter of legislative grace, and a taxpayer generally bears the burden of proving entitlement to any claimed deduction.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

II.    Charitable Contributions

A taxpayer may deduct charitable contributions made during the taxable year.  Sec. 170(a)(1).  A charitable contribution is defined as "a contribution or gift to or for the use of" a charitable organization.  Sec. 170(c).  However,

deductions for charitable contributions are allowed only if the taxpayer satisfies statutory and regulatory substantiation requirements. See sec. 170(a)(1); sec. 1.170A-13, Income Tax Regs. The required substantiation depends on the size of the contribution and on whether the contribution is a gift of cash or property.

A cash contribution to charity made on or before August 17, 2006, in an amount less than $250 may be substantiated with a canceled check, a receipt, or other reliable evidence showing the name of the donee, the date of the contribution, and the amount of the contribution. Alami El Moujahid v. Commissioner, T.C. Memo. 2009-42; sec. 1.170A-13(a)(1), Income Tax Regs. For cash contributions made to charity after August 17, 2006, stricter requirements now provide that no deduction shall be allowed for a contribution of money in any amount unless the donor maintains a bank record or written communication from the donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution. Sec. 170(f)(17); Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 1217, 120 Stat. at 1080.

For any contributions of $250 or more, the taxpayer must substantiate the contribution with a "contemporaneous written acknowledgment" from the charitable organization. Sec. 170(f)(8)(A). The written acknowledgment must include: (1) the amount of cash and a description (but not value) of any property

other than cash contributed; (2) whether the charitable organization provided any goods or services in consideration for the contribution; and (3) a description and good-faith estimate of the value of any goods or services provided by the charitable organization, or if such goods and services consist solely of intangible religious beliefs, a statement to that effect. Sec. 170(f)(8)(B); sec. 1.170A-13(f), Income Tax Regs. The acknowledgment is "contemporaneous" if the taxpayer obtains it from the charitable organization on or before the earlier of: (1) the date the taxpayer files a tax return for the year of contribution or (2) the due date, including extensions, for filing that tax return. Sec. 170(f)(8)(C). In the absence of a contemporaneous written acknowledgment meeting the statute's requirements, "[n]o deduction shall be allowed". Sec. 170(f)(8)(A).

A. Cash Contributions to a Church

Mr. and Mrs. Simpson deducted $2,125 for charitable contributions they made to their church. Mrs. Simpson credibly testified that petitioners contributed tithes and offerings to their church by check and in cash during 2013. The Court understood Mrs. Simpson's testimony to mean that petitioners made regular contributions each of which may have been less than $250 to their church throughout the year.

The parties stipulated a letter from petitioners' church, dated November 22, 2016, addressed to Mr. Simpson. Mrs. Simpson credibly testified that she and Mr. Simpson received a contribution letter each year from their church, but they did not keep a copy of the letter for 2013. The stipulated letter from the church lists the total amounts of contributions it received from Mr. and Mrs. Simpson for 2011, 2012, and 2013 and explains that the church does not archive contribution letters for more than two years. For 2013 the letter lists contributions made by Mr. and Mrs. Simpson totaling $2,125 but does not indicate on what dates the contributions were made. The letter also states: "These donations were not in exchange for goods or services and are tax deductible."

The stipulated letter does not include the date(s) of the contributions as required by section 170(f)(17). The Court concludes that Mr. and Mrs. Simpson are not entitled to deduct $2,125 for the charitable contributions they made to their church in 2013 because they failed to meet the recordkeeping requirements of the statute.

B.      Timeshare Contribution to Success Center Fundraiser

At trial Mrs. Simpson testified that they contributed the use of their timeshare to a Success Center fundraiser. Mrs. Simpson testified that Success

Center is a tax-exempt charitable organization under section 501(c)(3).[7]  The parties stipulated a letter addressed to Mr. and Mrs. Simpson from Success Center dated November 30, 2013.  The letter states that they donated a gift of $3,000 and is signed by Mrs. Simpson, as the executive director.  Mr. and Mrs. Simpson assert that the letter supports the claimed charitable contribution deduction for the use of their timeshare.

However, the letter does not specify whether the donation was a gift of cash or property.  Even if the Court accepted Mrs. Simpson's testimony that she and Mr. Simpson contributed the use of their timeshare to the Success Center fundraiser, the stipulated letter does not contain sufficient information to satisfy the substantiation requirements for a charitable contribution deduction.  See sec. 170(f)(11)(B); sec. 1.170A-13(b)(3), Income Tax Regs.  Accordingly, Mr. and Mrs. Simpson may not deduct $3,000 for the charitable contribution of the use of their timeshare.

---

[7]At trial respondent did not challenge whether Success Center meets the definition of an organization to which a donation is eligible for a charitable contribution deduction.  See sec. 170(c).  Accordingly, the Court deems that issue conceded.

C.    Additional Charitable Contributions

Mr. and Mrs. Simpson did not provide any other evidence to substantiate the remaining $6,105 of their claimed charitable contribution deduction. Accordingly, they are not entitled to deduct the remaining $6,105 for charitable contributions.

III.    Unreimbursed Employee Expenses

Mr. and Mrs. Simpson asserted at trial they were entitled to deduct $30,348.90[8] as unreimbursed employee expenses on their 2013 tax return.

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). Generally, the performance of services as an employee constitutes a trade or business. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). To be ordinary the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495 (1940). To be necessary an expense must be appropriate and helpful to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113. If as a condition of employment an employee is required to incur certain expenses, then the employee is entitled to

_____

[8]Mr. and Mrs. Simpson reported $24,968 of unreimbursed employee expenses on their 2013 tax return, and respondent disallowed the full amount. At trial they asserted they were entitled to a larger deduction.

a deduction for those expenses unless he or she is entitled to reimbursement from his or her employer. See Fountain v. Commissioner, 59 T.C. 696, 708 (1973); Spielbauer v. Commissioner, T.C. Memo. 1998-80.

An employee business expense is not "ordinary and necessary" if the employee is entitled to reimbursement from his or her employer but fails to seek reimbursement. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo. 2012-272, at *22. Section 262(a) generally disallows a deduction for personal, living, or family expenses.

As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has paid a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the amount, the Court may estimate the amount and allow a deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Otherwise, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Deductions for expenses attributable to travel ("including meals and lodging while away from home") and the use of "listed property" (as defined in section

280F(d)(4) and including passenger automobiles), if otherwise allowable, are subject to strict rules of substantiation. Sec. 274(d); see Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). With respect to deductions for these types of expenses, section 274(d) requires that the taxpayer substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense, (2) the time and place the expense was incurred, and (3) the business purpose of the expense. For "listed property" expenses, the taxpayer must establish the amount of business use and the amount of total use for such property. See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or paid bills) of certain expenditures. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement

specifically detailing the required elements.  Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

With these fundamental principles of Federal income tax in mind, the Court considers Mr. and Mrs. Simpson's claims for the various unreimbursed employee expense deductions in dispute.

A.      Mrs. Simpson's Unreimbursed Employee Expenses

At trial Mrs. Simpson asserted she is entitled to deduct $24,732.90 for the following unreimbursed employee expenses:  (1) business use of home; (2) cellular phone; (3) cable and internet; (4) travel; and (5) car and truck.  Success Center's personnel policy provided reimbursement to employees for travel and other expenses on the basis of available funds.  Mrs. Simpson testified that she did not seek reimbursement for any of her expenses because she did not want to burden the organization with these expenses when the funds could be used instead to provide direct services.

In order to deduct unreimbursed employee expenses, a taxpayer must not have received reimbursement but also must not have the right to obtain reimbursement from her employer.  Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533.  Mrs. Simpson was entitled to obtain reimbursement subject to the availability of funds.  She did not provide any

evidence that in 2013 Success Center lacked the funds to reimburse all or part of her employee expenses. Mrs. Simpson cannot deduct the expenses Success Center would have reimbursed, and she has failed to establish that any of her asserted expenses would not have been reimbursed.

Moreover, for those expenses subject to section 274(d) Mrs. Simpson did not maintain a log, a calendar, or a similar record required to properly substantiate or demonstrate the business purposes of the various employee expenses. Mrs. Simpson is not entitled to deduct $24,732.90 for her unreimbursed employee expenses.

### B. Mr. Simpson's Car and Truck Expenses

At trial Mr. Simpson asserted he is entitled to deduct $5,616 for car and truck expenses with respect to his passenger automobile, the GMC truck, using the standard mileage rate. Mr. Simpson prepared a worksheet for trial listing the total miles he drove during 2013 as 12,424 miles, of which 9,939 miles were driven for business. He also listed that he drove his car 80% for business. Mr. Simpson clarified at trial that as to his job with Pacific he was entitled to deduct only the miles not reimbursed by his employer when he worked a double shift, i.e., the miles from the first assignment location back to the dispatch office and from the dispatch office to the second assignment location. Mr. Simpson also asserted that

he is entitled to deduct an expense for miles he drove with respect to independent contractor work performed during 2013.

### 1. Pacific Expenses

Mr. Simpson testified that his job assignments were different each day and occurred at different locations in California, including San Francisco, Benicia, Richmond, Redwood City, Stockton, Sacramento, and Oakland. Mr. Simpson testified that Pacific did not reimburse him for the miles he drove from the first job assignment location back to the dispatch office or from the dispatch office to the second job assignment location when he worked a double shift. Mr. Simpson testified that he did not have any documentation identifying when he worked a double shift for which he was not subject to reimbursement. According to the stipulated 2013 hour and wage detail report, Mr. Simpson worked both shifts only on February 4, July 19, August 7, August 9, December 12, December 20, December 23, and December 26, 2013.

The Court is not persuaded by Mr. Simpson's testimony, and he has not provided sufficient credible evidence to corroborate he is entitled to a deduction for miles he drove with respect to double shifts that he worked for Pacific.

## 2. Independent Contractor Expenses

Mr. and Mrs. Simpson testified that Mr. Simpson drove for his work as an independent contractor during 2013. Mr. Simpson did not provide any evidence to substantiate a claimed deduction for miles he drove that were related to his work as an independent contractor. Accordingly, Mr. and Mrs. Simpson are not entitled to deduct $5,616 for his car and truck expenses for 2013.

## IV. State and Local Income Taxes

Mr. and Mrs. Simpson claimed a deduction of $4,319 for State and local income taxes on the Schedule A attached to their 2013 tax return. The IRS allowed that deduction. At trial Mr. and Mrs. Simpson asserted that they were entitled to deduct an additional $1,386 for State and local income taxes. They asserted that the California State disability insurance (CASDI) paid and listed on their Forms W-2, Wage and Tax Statement, and Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., were the equivalent of State and local income taxes and were not included in the claimed State and local income tax deduction.

Section 164(a)(3) provides that State and local income taxes are allowed as a deduction for the taxable year within which they are paid or accrued. Direct

contributions by employees to CASDI are valid income tax payments deductible under section 164(a)(3). Trujillo v. Commissioner, 68 T.C. 670, 673 (1977).

Mr. and Mrs. Simpson introduced into evidence four Forms W-2 and two Forms 1099-R for 2013. The total State income tax, CASDI, and local income tax reported as paid on the Forms W-2 and Forms 1099-R equals $4,318.13, which when rounded equals the deduction respondent allowed for State and local income taxes.

The parties stipulated an exhibit that showed that Mr. and Mrs. Simpson made an additional payment for State income tax of $895.96 on December 16, 2013, that was applied to their 2011 California income tax. Respondent did not raise any evidentiary objections to this document. Mr. and Mrs. Simpson are entitled to an additional deduction of $895.96 for State and local income taxes for 2013.

The Court has considered all of the parties' arguments, and, to the extent not addressed herein, the Court concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.