JOHN D. MOSS, JR., AND DIANE C. MOSS, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9975–80.    Filed May 25, 1983.

*Eugene L. Mahoney* and *Arnold A. Silvestri*, for the petitioners.

*Tom P. Quinn*, for the respondent.

WILBUR, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1976 of $1,125 and for 1977 of $1,351. After concessions by the respondent, the sole issue for our decision is whether petition-

---

er is entitled to deduct his share of the partnership's expenses representing daily business luncheon meetings.

### FINDINGS OF FACT

Some of the facts have been stipulated and those facts are so found. The stipulation of facts and the attached exhibits are incorporated by this reference.

The petitioners are husband and wife who resided in Chicago, Ill., when they timely filed the 1976 and 1977 Federal income tax returns in question. Petitioner Diane C. Moss is a party to this proceeding solely because she filed a joint return with her husband, petitioner John Moss.

Petitioner, an attorney, was a partner in the law firm Parrillo, Bresler, Weiss & Moss in 1976 and 1977. The firm filed a partnership return for each of the years in question. It took a deduction each year for "meetings and conferences." Petitioner has claimed his share of the firm's expense on his individual return.

Parrillo, Bresler, Weiss & Moss was a firm of six or seven lawyers who specialized in insurance defense work. Their case load was extremely heavy. Most of the lawyers spent the better part of each day participating in or preparing for depositions and trials throughout the greater Chicago area. Judges often held hearings on short notice, thus making it necessary for the firm to assign cases and plan schedules at the last minute.

Robert Parrillo, the senior partner, was responsible for all cases involving the firm's major client, the Safeway Insurance Co.[1] His partners and associates handled the details of these cases, but no final settlements were made without his approval.

The firm had an unwritten policy of meeting every day during the noon recess at the Cafe Angelo, a small, quiet restaurant conveniently located near the courts and the office. Over lunch, the lawyers would decide who would attend various sessions;[2] discuss issues and problems that had come

---

[1]Petitioner's partner Robert Parrillo testified at trial that about 85 to 90 percent of the law firm's income and legal work came from the Safeway Insurance Co.

[2]Petitioner introduced into evidence several examples of the firm's "Daily Call Sheet."

up in the morning; answer questions and advise each other on how to handle certain pending matters; update Mr. Parrillo on settlement negotiations; and, naturally, engage in a certain amount of social banter. Attorneys attended whenever possible for as long as possible; sometimes they ate, at other times they merely joined in the discussions.

The law firm paid for the meals eaten during the noontime meetings. In 1976, the total bill was $7,113.85;[3] in 1977, they spent $7,967.85. The bill from the Cafe Angelo represents the bulk of the firm's "meeting and conference" expense.[4]

The noon hour was the most convenient and practical time for the firm to have its daily meeting.[5] The courts were almost always in recess at this time, so most attorneys could attend. The more experienced members of the firm were available to advise and educate the fledgling litigators. Parrillo was there to discuss and approve settlements. The Cafe Angelo provided a good location, efficient service, reasonable prices, and a place where judges could locate the attorneys.

In its statutory notice of deficiency, respondent disallowed petitioner's distributive share of the Cafe Angelo expense, along with other items upon which the parties have reached an agreement.

## OPINION

Petitioner is a partner in a Chicago law firm that met every business day in 1976 ánd 1977 at the Cafe Angelo for lunch. Current litigation problems, scheduling, assignments, and settlement of cases were discussed at that time. The firm paid for the meals of those lawyers who ate during the firm

---

This master list, prepared by the docket secretary, showed the case name, court number, "call" (or what item was pending), location, and time of all matters scheduled. At lunch, the attorneys would decide who would handle what matters and so note on the call sheet.

[3]The statutory notice of deficiency and other work papers of the respondent show the expense as $7,103.85, although the stipulation of facts list it as $7,113.85. This latter figure appears to be the correct sum of the monthly bills from Cafe Angelo, and we will accept it as such.

[4]The partnership return shows a 1976 meeting and conference expense of $7,894, of which $7,113.85 was spent at the Cafe Angelo. In 1977, the figures were $8,670 and $7,967.85, respectively.

[5]At trial, respondent suggested several other times at which the partners and associates could conceivably have met. While we agree that it would have been possible to meet at 7 a.m. or 6 p.m., we believe Mr. Parrillo's testimony that such meetings would have been less well attended and less effective.

meetings. The issue for decision is whether petitioner may deduct his share of those expenses in calculating his taxable income.

Petitioner contends that the luncheon meeting expenses are deductible under section 162[6] as ordinary and necessary business expenses. In the alternative, he claims that they qualify for deduction under section 1.162–5, Income Tax Regs., as outlays for education. Respondent, conversely, claims that the lunches are a personal and therefore nondeductible expense. We agree with respondent.[7]

The broad purpose of the Internal Revenue Code is to tax all accessions to wealth, "from whatever source derived." Sec. 61(a). The goal being to tax income, business expenses reduce taxable income. Sec. 162. Funds spent on personal consumption, on the other hand, are not deductible. Sec. 262. The boundary line dividing personal expenses from business expenses, often obscurely marked, has been a fertile field of battle. The taxpayer bears the burden in these skirmishes. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. In close contests, it is essential to bear in mind that the provisions of section 262 take priority over section 162. *Sharon v. Commissioner*, 66 T.C. 515, 522-523 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978).

The expense in question is close to that evanescent line dividing personal and business expenses. From the perspective of the partnership, the lunches were a cost incurred in earning their income. The lawyers needed to coordinate assignments and scheduling of their case load, and the noon hour was a

---

[6]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

[7]Respondent has directed virtually all of his fire to his argument under sec. 162. Nevertheless, he also suggests that the deduction should be denied as petitioner has not provided adequate substantiation as required by sec. 274(d). The parties stipulated the daily "guest checks" establishing the date, place, and amount spent at the lunches; they also stipulated the corresponding checks by which each of the bills was paid. Additionally, copies of the "daily call sheets" were stipulated; there is no dispute that these call sheets introduced in evidence were a significant item discussed at the luncheons. The lawyers in the firm (with the exception of a rare guest) were the only ones eating. Respondent's sec. 274 arguments seem to reflect a decision to leave no arrow remaining in his quiver. While we have doubts that his argument has validity on the facts before us, our decision on the first issue makes it unnecessary to decide whether he is wide of the mark.

logical, convenient time at which to do so. They considered the meeting to be part of their working day, not as an hour of reprieve from business affairs. The individuals did not feel free to make alternate plans, or to eat elsewhere. For this firm, petitioner argues, the meeting was both ordinary and necessary.

The Commissioner focuses not on the circumstances bringing the partnership together each day, but rather on the fact that the individuals were eating lunch while they were together. Rather than to section 162, he looks to section 262, and the regulations which specifically categorize meals as personal expenses.[8] Sec. 1.262–5, Income Tax Regs. The respondent, in essence, argues that while the meeting may have been ordinary and necessary to the business, the outlay was for meals, a personal item.

The dual nature of the business lunch has long been a difficult problem for legislators and courts alike. The traditional view of the courts has been that if a personal living expense is to qualify under section 162, the taxpayer must demonstrate that it was "different from or in excess of that which would have been made for the taxpayer's personal purposes." *Sutter v. Commissioner*, 21 T.C. 170, 173 (1953).[9]

Following the *Sutter* formula, numerous taxpayers have attempted to deduct the cost of meals eaten under unusual or

---

[8]Sec. 1.262–1. Personal, living and family expenses.

(b) * * *

(5) * * * Except as permitted under section 162, 212, or 217 the costs of the taxpayer's meals not incurred in traveling away from home are personal expenses.

[9]A similar balance governs the tension between secs. 213 and 262. Satisfaction of nutritional needs is presumptively personal, yet when medical conditions require specially prepared foods we have allowed a deduction for the additional costs because "the sole benefit received for the added expenses was the relief from medical infirmities." *Randolph v. Commissioner*, 67 T.C. 481, 488 (1976); *Cohn v. Commissioner*, 38 T.C. 387 (1962); cf. *Taylor v. Commissioner*, T.C. Memo. 1982–114 (no sec. 213 deduction because "there is no showing * * * that the substitute foods * * * were more expensive than the other foods").

The present circumstances do not require an exploration of the dimensions of our opinion in *Sutter v. Commissioner*, 21 T.C. 170 (1953). We note, however, that in the case of business meals, *Sutter* permits a deduction where the expense is "different from or in excess of" the personal expenditure the taxpayer would otherwise have made. This language is in the disjunctive. Business meals have received extensive congressional consideration through the years. Accordingly, Congress is presumed to be aware of the administrative practice permitting the entire expense of a business meal to be deducted without fragmentation. In essence, where a proper business purpose and relationship are established, the expenses are presumed to be different from one the taxpayer would normally have made.

constraining circumstances. The claims have been denied almost invariably. See, e.g., *Fife v. Commissioner*, 73 T.C. 621 (1980) (attorney may not deduct cost of meals eaten in restaurants due to late client meetings); *Ma-Tran Corp. v. Commissioner*, 70 T.C. 158 (1978) (corporation may not deduct cost of officer's locally consumed meals absent travel or compliance with section 274); *Drill v. Commissioner*, 8 T.C. 902 (1947) (construction worker cannot deduct cost of dinners on nights he worked overtime).[10] Daily meals are an inherently personal expense, and a taxpayer bears a heavy burden in proving they are routinely deductible.

Petitioner relies on *Wells v. Commissioner*, 626 F.2d 868 (9th Cir. 1980), affg. without published opinion T.C. Memo. 1977–419, in support of his position.[11] In *Wells*, we denied a deduction claimed by a public defender for the cost of occasional lunch meetings with his staff. The Court noted, however, that in a law firm, "an occasional luncheon meeting with the staff to discuss the operation of the firm would be regarded as an 'ordinary and necessary expense.'" We note, first, that this statement is dictum in a memorandum opinion, and thus not controlling. Second, that case referred to occasional lunches, a far cry from the daily sustenance involved in the case at bar. Even assuming that *Wells* is of any assistance to petitioner, we need not decide where the line between these two cases should be drawn, for we are convinced that outlays for meals consumed 5 days per week, 52 weeks per year would in any event fall on the nondeductible side of it.

The only recent cases where deductions were allowed for meals taken on a regular basis were *Sibla v. Commissioner*, 611 F.2d 1260 (9th Cir. 1980), affg. 68 T.C. 422 (1977), and *Cooper v. Commissioner*, 67 T.C. 870 (1977). Those cases involved Los Angeles firemen who were required to contribute to a meal fund for each day they were on duty, regardless of

---

[10]See also *Hirschel v. Commissioner*, T.C. Memo. 1981–189, affd. without published opinion 685 F.2d 424 (2d Cir. 1982) (taxpayer-student may not deduct cost of meals on nights when class meets after work); *Moscini v. Commissioner*, T.C. Memo. 1977–245 (policeman may not deduct restaurant meals eaten while on duty even though police regulations forbid him to leave city limits); *Antos v. Commissioner*, 570 F.2d 350 (9th Cir. 1978), affg. without published opinion T.C. Memo. 1976–89 (taxpayer CPA may not deduct cost of meals eaten while working late in his own office).

[11]Cf. *Lennon v. Commissioner*, T.C. Memo. 1978–176.

whether they ate or even were present at the fire station. This Court allowed them to deduct the expense under section 162; a concurring opinion would have allowed the expense by analogy to section 119. *Cooper v. Commissioner, supra* at 874–876. On appeal, the Ninth Circuit approved of both theories, stating that because the taxpayer's situation was both unusual and unique, the expense was business rather than personal.[12]

The decision by the Ninth Circuit implies that similar considerations are involved in determining whether a meal is a business expense under section 162 and whether the value of a meal supplied by an employer should be included in gross income under section 61. Section 119 provides a limited exception to section 61 by allowing an employee to exclude such amounts if the meal is furnished on the business premises for the convenience of the employer. The cases decided under section 119 have focused on the degree to which the employee's actions are restricted by his employer's demands. *Sibla v. Commissioner, supra* at 1265; *Commissioner v. Kowalski*, 434 U.S. 77 (1977). Language referring to compliance with the demands of one's employer can also be found in section 162 cases decided by this Court. See, e.g., *Moscini v. Commissioner*, T.C. Memo. 1977–245 ("restrictions on the manner in which petitioner could take his meals while on duty were not so significant that they transformed an essentially personal expense into a business expense"); cf. *Hirschel v. Commissioner*, T.C. Memo. 1981–189.

Petitioner relies on this notion of restriction in contending that the cost of the lunches, like the cost of the firehouse mess in *Sibla* and *Cooper*, should be deductible. He argues that the attorneys "considered the luncheon meetings as a part of their regular work day," and that the firm incurred the expense "solely for the benefit of its practice and not for the personal convenience of its attorneys."

---

[12]Two cases decided after *Sibla v. Commissioner*, 611 F.2d 1260 (9th Cir. 1980), affg. 68 T.C. 422 (1977), and *Cooper v. Commissioner*, 67 T.C. 870 (1977), have effectively confined that holding to its facts. In *Duggan v. Commissioner*, 77 T.C. 911 (1981), a Minnesota fireman was denied a deduction for contributions to the firehouse mess. The Court found that, unlike Sibla and Cooper, Duggan was not required to participate in the common mess, nor was he forced to pay for meals he did not eat. Also, the mess was organized by the employees rather than the employer. And, in *Banks v. Commissioner*, T.C. Memo. 1981–490, this Court again denied the deduction, stating that "the single fact that the meal was required to be eaten at the fire station did not convert the cost of such into a business expense."

Petitioner has not explained, however, how this "restriction" is any different than that imposed on an attorney who must spend his lunch hour boning up on the Rules of Civil Procedure in preparation for trial or reading an evidence book to clarify a point that may arise during an afternoon session. In all these cases, the lawyer spends an extra hour at work. The mere fact that this time is given over the noon hour does not convert the cost of daily meals into a business expense to be shared by the Government.

In *Sibla* and *Cooper*, on the other hand, the firemen were required by law to contribute to the communal meals; the petitioner in *Cooper* was threatened with dismissal when he refused to pay for days when he was on duty but not at the station. The involuntary nature of the payment, and the taxpayer's limited ability to eat the meal for which he was paying combined to create a unique circumstance which justified allowance of the deduction. No such unique situation is presented here. On the contrary, petitioner is much like employees in all fields who find it necessary to devote their lunch hour to work-related activities.

In agreeing with the Commissioner on this point, we are well aware that business needs dictated the choice of the noon hour for the daily meeting. In a very real sense, these meetings contributed to the success of the partnership. But other costs contributing to the success of one's employment are treated as personal expenses. Commuting is obviously essential to one's continued employment, yet those expenses are not deductible as business expenses. Sec. 1.262–1, Income Tax Regs. As this Court stated in *Amend v. Commissioner*, 55 T.C. 320, 325, 326 (1970):

the common thread which seems to bind the cases together is the notion that some expenses are so inherently personal that they simply cannot qualify for section 162 treatment irrespective of the role played by such expenditures in the overall scheme of the taxpayers' trade or business. * * * "A businessman's suit, a saleslady's dress, the accountant's glasses are necessary for their business but the necessity does not overcome the personal nature of these items and make them a deductible business expense. * * * " [Quoting *Bakewell v. Commissioner*, 23 T.C. 803, 805 (1955); fn. ref. omitted.]

In the instant case, we are convinced that petitioner and his partners and associates discussed business at lunch, that the meeting was a part of their working day, and that this time

was the most convenient time at which to meet. We are also convinced that the partnership benefited from the exchange of information and ideas that occurred.

But this does not make his lunch deductible any more than riding to work together each morning to discuss partnership affairs would make his share of the commuting costs deductible. If only the four partners attended the luncheons, petitioner's share of the expenses (assuming they were coequal partners) would have corresponded to his share of the luncheons. This is not an occasion for the general taxpayer to share in the cost of his daily sustenance. Indeed, if petitioner is correct, only the unimaginative would dine at their own expense.[13]

Petitioner argues, in the alternative, that the cost of the meals may be deducted under sec. 1.162–5(a), Income Tax Regs., as an educational expense. Certainly the trading of information and ideas was beneficial to younger and older attorneys alike, and in that sense the lunches were educational. However, we find no cases supporting a deduction for informal training of the type that occurred here. Nor do we think Congress intended every occasion upon which information was imparted to qualify for deduction under section 1.162–5(a), Income Tax Regs. Again, combining nourishment with enlightenment does not make the nourishment deductible.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT, *J.*, concurring: I concur in the result in this particular case, but I want to make it clear that I do not view this opinion as disallowing the cost of meals in all instances where only partners, co-workers, etc., are involved. We have here findings that the partners met at lunch because it was

---

[13]We note that where the costs attributable to non-partner employees are specified, these costs may be deductible to the partners and compensation to the employees. That is not an issue on this record.

"convenient" and "convenient" 5 days a week, 52 weeks a year.

TANNENWALD, FAY, GOFFE, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, and COHEN, *JJ.*, agree with this concurring opinion.