MAL SPINRAD, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mal Spinrad, Inc. v. Commissioner
Docket No. 6669-80.
United States Tax Court
T.C. Memo 1984-362; 1984 Tax Ct. Memo LEXIS 313; 48 T.C.M. (CCH) 520; T.C.M. (RIA) 84362; July 16, 1984. *314 Meyer Weiner, for the petitioner. Melvin E. Lefkowitz, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: By way of a statutory notice of deficiency dated February 8, 1980, respondent determined deficiencies in petitioner's Federal income tax liability in the following amounts: Year
Deficiency
1974
$1,210.00
1975
660.00
1976
9,371.00
The deficiency determinations for 1974 and 1975 were based on the disallowance of a net operating loss carryback from 1977. The disallowance of the 1977 loss carryback and the deficiency determination for 1976 were based on the disallowance of deductions claimed for rental and repair expenses, meals for employees and compensation of officers, all of which are still in dispute. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Mal Spinrad, Inc. had its principal place of business at Reading, Pennsylvania, at the time it filed its petition. Rental and Repair Expenses
The dispute herein concerning the deductions claimed for rental and repair expenses arises out of the conversion of the residence of Malcolm and Darcy *315 Spinrad and their children at 509 Carsonia Avenue, Reading, Pennsylvania, [1] into a dual purpose property. During the years in dispute the property was used as the principal residence of the Spinrad family but also was used as the principal place of business of the petitioner corporation. Set forth below is a description of petitioner's business, of the uses of the property by the Spinrad family, of the reasons and manner by which the property in 1976 was converted into petitioner's principal place of business and of the uses of the property during the years 1976 and 1977. Prior to 1972 Malcolm and Darcy Spinrad were the sole shareholders of Harper Associates which was an employment agency in Allentown, Pennsylvania. It operated out of a commercial office which it rented for $400 per month. In 1972, Malcolm Spinrad incorporated petitioner herein under Pennsylvania law. Petitioner operated an employment agency which specialized in employee placement within the textile and garment *316 manufacturing industries. From the date of incorporation in 1972 through the year 1977, Malcolm and Darcy Spinrad each owned 50% of the stock of petitioner, and both were employed exclusively by petitioner during these years. Petitioner also employed one secretary and what was referred to at trial as one to two independent contractor consultants. Due to the hours worked, the difficulty of working effectively at their home after normal work hours without ready access to the files, the cost of the rent for a commercial office, and the available space in the house at 509 Carsonia Avenue, which previously had been occupied solely as the Spinrad's family residence, upon incorporation in 1972, petitioner did not lease the former office space of Harper Associates, nor did it obtain a lease on rental property elsewhere. Petitioner simply moved its sole office into the family residence. From the date of incorporation in 1972 to December 31, 1975, petitioner maintained its primary and sole office in the property at 509 Carsonia Avenue. Malcolm, Darcy, and the consultant worked very long and unusual hours in furtherance of the business. Clients were located throughout the world, and *317 it was often necessary to make and receive business calls at all hours of the night. The agency grew rapidly and became one of the recognized employment agencies in the country specializing in the textile and garment manufacturing industries. The net fees it received increased from $269,838 in 1973 to $458,404 in 1977. On December 31, 1975, the entire real property (land and house) owned by Malcolm and Darcy Spinrad at 509 Carsonia Avenue and used since 1966 as a family residence and since 1972 as the rent-free office of petitioner, was sold to a trust, the beneficaries of which were Claudia, Kenneth and John Spinrad, the children of Malcolm and Darcy Spinrad. The sales price was $60,000. Respondent concedes in his brief that the sales price reflected the fair market value of the residence. The record does not reflect the details of the financing arrangements for the sale of the house to the trust; nor is the trust instrument (or a copy thereof), or a description of the provisions of the trust reflected in the record. After the transfer of the property to the trust, the Spinrad family did not move out of the house. Throughout 1976, 1977 and through the present time the family *318 has lived on the property. No rent was paid by the family to the trust for this use of the property. It was apparently the intention of Malcolm and Darcy Spinrad that the property, as a result of the business use of the property by petitioner, be converted entirely from a family residence into a place of business, and that after January 1, 1976, the Spinrad family not occupy the property as residents, but rather occupy and reside in the property solely for the convenience of and as employees of the petitioner corporation. In consideration for its use (after December 31, 1975) of the property at 509 Carsonia Avenue as its principal place of business, petitioner entered into a lease with the trust under which petitioner was to pay the trustee $800 per month for petitioner's use of the property. Respondent concedes in his brief that the $800 represents a fair rental value for the house at 509 Carsonia Avenue. The house consists of three floors and an unfinished basement. The ground floor has a kitchen, living room, den, bathroom, foyer and garage. The second floor has a master bedroom suite with bathroom, two smaller bedrooms and another bathroom. The third floor has three rooms. *319 During the years involved herein, the rooms on the first floor were used to prepare and serve meals for the Spinrad family and for employees of petitioner, for family relaxation, and occasionally for interviews of clients of petitioner. The rooms on the second floor were used for the sleeping quarters of the Spinrad family. Occasionally a client slept overnight in one of the smaller bedrooms. The rooms on the third floor were decorated and furnished as offices, including phones in each room, and were used exclusively as such. The basement was used to store personal items of the Spinrad family and to store files and records pertaining to petitioner's business. In 1976 and 1977, petitioner paid to the trust $14,478.72 and $15,538.82, respectively, as rent for the use of the 509 Carsonia Avenue property. Under the January 2, 1976 lease between petitioner and the trust, petitioner, in addition to the $800 monthly rental obligation, was required to make all repairs needed on the house and to maintain the landscaping. To this end, petitioner paid for, among other things, a lawn mower and the painting of the exterior of the house. Repair expenses on the property paid by petitioner *320 in 1976 and 1977 were $5,487.38 and $4,111.38, respectively. Petitioner claimed as deductible business expenses on its Federal income tax returns for 1976 and 1977 the amounts indicated above for rental fees and repairs paid with respect to the 509 Carsonia Avenue property. Respondent has allowed one-third of these amounts and disallowed the balance on the basis that only one-third of the house was used primarily for the business of petitioner and the balance of the house continued to serve as the personal residence of the Spinrad family. Meal Expenses
At a meeting of petitioner's Board of Directors on December 2, 1975 (in anticipation of the transfer of the 509 Carsonia Avenue property to the trust), a corporate policy was adopted to the effect that petitioner's officers (namely Malcolm and Darcy Spinrad) were required to reside in and to eat the majority of their meals at the office of petitioner at 509 Carsonia Avenue. In 1975, 1976 and 1977, Malcolm and Darcy Spinrad purchased groceries for meals prepared and consumed at 509 Carsonia Avenue by members of the Spinrad family and by employees of petitioner. Frequently, the independent consultant would eat breakfast with *321 Malcolm and Darcy Spinrad at the house. Also, the consultant and the secretary would very often eat lunch with the Spinrads at the house, rather than go out for lunch. Approximately two times a week the consultant, who frequently worked late into the night, would eat dinner with the Spinrads, rather than go home for dinner and then return to work for the evening. At mealtime, discussions were held concerning the business of petitioner and often meals were eaten "on the run" in the middle of telephone discussions with clients. Occasionally a client would eat at the house. The three Spinrad children would eat meals when visiting or staying overnight at the house. To pay for the meals described above, the Spinrads spent $4,941 for meals in 1975, $2,243.15 for meals in 1976 and were reimbursed by petitioner for both of these amounts in 1976. Additionally, in 1976, $1,742.85 was spent for groceries purchased directly with petitioner's funds. In 1977, $4,306.55 was spent on groceries, utilizing funds of both petitioner and the Spinrads. The record does not indicate what portion of the 1977 grocery bills was reimbursed by petitioner to the Spinrads. On petitioner's 1976 and 1977 *322 Federal income tax returns, petitioner deducted the full amount of the meal expenses outlined above. Respondent has disallowed the entire amount. Salary Expenses
The salaries to be paid by petitioner to Malcolm and Darcy Spinrad were established at a Special Meeting of the Board of Directors held on January 5, 1973. The salaries were to be paid pursuant to a formula based upon "net fees," which were defined as "gross fees from placements less return fees and fees paid to consultants and other agencies." Malcolm was to be paid 30% and Darcy 20% of net fees. Utilizing this formula, the combined salaries of Malcolm and Darcy would have been $229,202.00 for 1977. The amount of salaries actually paid to Malcolm and Darcy during 1977 and claimed by petitioner on its 1977 Federal income tax return was $242,000. The $12,798.00 paid in excess of the $229,202.00 was disallowed by respondent. Due to inadequate funds during the four years prior to 1977, the amounts paid to Malcolm and Darcy as compensation in those years were less than the amounts which were computed under the salary formula. The differences between the salaries computed under the formula and the salaries actually *323 pain in those years to Malcolm and Darcy are reflected below: 1973
1974
1975
1976
Formula
134,919.30 161,839.95 134,578.34 208,051.80 Salaries Paid
129,320.00 148,100.00 124,000.00 192,000.00 Shortage
(5,599.30)
(13,739.95)
(10,578.34)
(16,051.80)
In addition to the salaries paid, petitioner also provided a pension plan and medical expense reimbursement plan for the benefit of employees. Petitioner claims that the $12,798 paid in 1977 in excess of the $229,202 due in 1977 under the salary formula was intended to partially pay Malcolm and Darcy for the underpayments in the prior four years. The amounts of dividends paid by petitioner to its shareholders during the years 1973 through 1977 were as follows: Year
Amount
1973
$1,100
1974
0
1975
1,000
1976
800
1977
800
OPINION Rental and Repair Expense
Respondent has disallowed two-thirds of the amounts claimed by petitioner as rental and repair expenses with respect to its use of 509 Carsonia Avenue. The amounts claimed on petitioner's 1976 Federal income tax return were $14,478.72 for rental expenses and $5,487.38 for repair expenses. *324 For 1977, the amounts were $15,583.82 and $4,111.38, respectively. The basis for respondent's determinations was that two-thirds of the claimed amounts represent personal expenditures pursuant to Section 262[2] because two-thirds of the residence was devoted to personal use by the Spinrad family, rather than business use by petitioner. Petitioner contends that the entire amounts claimed represent ordinary and necessary business expenses of petitioner under Section 162. Rental expenses incurred in conducting a trade or business are generally deductible, provided that such payments are required to be made as a condition of the continued use or possession of the premises. Section 162(a)(3). Normally, where the lessor or *325 lessee are closely related, as they are herein, an inquiry into what constitutes reasonable rental is required. Place v. Commissioner,17 T.C. 199, 204 (1951), aff'd per curiam 199 F.2d 373 (6th Cir. 1952). Ordinary and necessary repair expenses incurred in conducting a trade or business are deductible provided that they do not appreciably prolong the life of the property. Section 162; Sec. 1.162-4, Income Tax Regs. In this case, respondent has conceded that $800.00 per month is a reasonable rental charge for the entire house and respondent does not contend that the repairs prolonged the life of the property. Where property is used both for business and personal purposes, an additional inquiry must be made as to whether the use of the property is primarily associated with business purposes and whether the personal use is distinctly secondary and only incidental. If such is the case, full deductibility of the maintenance and other business expenses associated with the property is allowed. This primary purpose test, however, is not applicable where substantial business and substantial personal uses of the property coexist. *326 International Artists, Ltd. v. Commissioner,55 T.C. 94, 105 (1970). Where the personal uses are more than incidental, an allocation between the business and personal uses becomes necessary and expenses associated with the personal use of the property are not deductible. See Sapp v. Commissioner,36 T.C. 852 (1961), aff'd per curiam 309 F.2d 143 (5th Cir. 1962); International Artists, Ltd. v. Commissioner,supra; and sec. 1.262-1(b)(3), last sentence, Income Tax Regs. Such an allocation must be based on the facts and circumstances of each case and is not always susceptible to exact mathematical calculation. However, a ratio computed on the basis of the amount of time or space which is devoted to business use over total use has been utilized by this and other courts. See International Artists, Ltd. v. Commissioner,supra;Sapp v. Commissioner,supra; and Heuer v. Commissioner,283 F.2d 865 (5th Cir. 1960), aff'g per curiam 32 T.C. 947 (1959). *327 In Saurini v. Commissioner,T.C. Memo. 1983-524, for example, the deductibility of repair expenses incurred in repairing a foundation and stairway on taxpayer's real property was in issue. Fifty percent of the house was rented out to a tenant, while the other fifty percent was used as the taxpayer's residence. It was held that fifty percent of the deduction claimed was allowable while the other fifty percent represented a nondeductible personal expenditure. A similar allocation was made in Gazzola v. Commissioner, a Memorandum Opinion of this Court dated June 1, 1949. In this case, one floor out of three floors in the 509 Carsonia Avenue property was utilized exclusively for the business activities of petitioner. Two floors were used primarily as the personal residence of Malcolm and Darcy Spinrad and their children. Accordingly, we find respondent's allocation disallowing two-thirds of the claimed rental and repair expenses to be reasonable, and we uphold respondent on this issue. [3]
*328 Meal Expenses
The next issue concerns the deductibility of expenses claimed by petitioner for the cost of groceries used in the preparation of meals which were consumed on a daily basis by the Spinrad family, a consultant and a secretary. Petitioner argues that the costs of the groceries constitute ordinary and necessary business expenses pursuant to Section 162 because the employees were required to live on the premises in order to have immediate access to the files and telephones. Respondent takes the position that these are nondeductible personal expenses pursuant to Section 262. We agree with respondent. The outcome of this issue is governed by our recent Court reviewed opinion in Moss v. Commissioner,80 T.C. 1073 (1983), on appeal (7th Cir. April 16, 1984). In that case, the taxpayer was a partner in a law firm which specialized in litigation. Attorneys in the firm were expected to meet every regular business day at noon in a particular restaurant. At these meetings, business such as work assignments, trial strategy and possible settlements were discussed. Although we were convinced that these meetings were a part of the working day and contributed *329 to the success of the partnership, we held that expenses of the daily luncheon meals, at least where provided on such a routine basis, were nondeductible personal expenditures. As we stated in Fred B. Amend Co. v. Commissioner,55 T.C. 320, 326 (1970), aff'd 454 F.2d 399 (1971)-- [s]ome expenses are so inherently personal that they simply cannot qualify for section 162 treatment irrespective of the role played by such expenditures in the overall scheme of the taxpayers' trade or business * * * "A businessman's suit, a saleslady's dress, the accountant's glasses are necessary for their business but the necessity does not overcome the personal nature of these items and make them a deductible business expense." [Ouoting Bakewell v. Commissioner,23 T.C. 803, 805 (1955); fn. ref. omitted.] In Moss,supra, we rejected taxpayer's reliance on dictum contained in Wells v. Commissioner,626 F.2d 868 (9th Cir. 1980), aff'g without published opinion a Memorandum Opinion of this Court, which seemed to indicate *330 that an occasional luncheon meeting with the staff to discuss the operation of the firm would qualify as an ordinary and necessary business expense. In so doing we stated-- [e]ven assuming that Wells is of any assistance to petitioner, we need not decide where the line between these two cases should be drawn, for we are convinced that outlays for meals consumed 5 days per week, 52 weeks per year would in any event fall on the nondeductible side of it. 80 T.C. at 1078. The taxpayer in Moss,supra, claimed expenses of lunch every business day of the year. Petitioner herein would have us go even further and allow the cost of breakfast, lunch and dinner every business day of the year. The analysis set forth in Moss,supra, is as applicable to a corporation as it is to a partnership. Absent a bona fide travel or entertainment expense pursuant to sections 162(a) and 274, locally consumed meals are generally not deductible even if they were consumed "on company business." See Ma-Tran Corp. v. Commissioner,70 T.C. 158, 170 (1978). Ordinarily, *331 expenses for food are about as personal as any expenses can be. Drill v. Commissioner,8 T.C. 902 (1947). Nor does the mere fact that the meals were required to be eaten on the business premises convert the cost of the meals into a business expense. Banks v. Commissioner,T.C. Memo. 1981-490. The meals herein were provided on a routine, daily basis to members of the Spinrad family and to a few individuals associated with the business. This fact, combined with the fact that the meals were prepared and served in the same structure also used as the family residence, makes petitioner's position particularly unsupportable. We conclude this issue with a quote from Moss v. Commissioner,supra, which is appropriate to this case: "This is not an occasion for the general taxpayer to share in the cost of [these individuals'] daily sustenance. Indeed, if petitioner is correct, only the unimaginative would dine at their own expense." 80 T.C. at 1081. Salary Expenses
The final issue for our consideration is the disallowance by respondent of $12,798.07, out of a total combined salary of $242,000, paid to Malcolm *332 and Darcy Spinrad during 1977. A deduction for reasonable salaries or other compensation for personal services actually rendered is allowed when such amounts are ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 162(a)(1). In order to be deductible, compensation must be paid for services rendered and be reasonable in amount. Section 1.162-7(a), Income Tax Regs.
Petitioner argues that the $12,798.07 represent payment for services in prior years for which they were underpaid. Respondent argues that petitioner has failed to establish any underpayment in the prior years. We agree with petitioner. It is well established that an employer may deduct in the current year compensation paid for services rendered in prior years. Lucas v. Ox Fibre Brush Co.,281 U.S. 115 (1930); Associated Theatres Corp. v. Commissioner,14 T.C. 313 (1950). Formula compensation arrangements *333 based upon percentages of sales or receipts have previously been upheld in numerous cases if the argeement was reasonable and entered into at arm's length when it was made. See, among others, Home Interiors and Gifts, Inc. v. Commissioner,73 T.C. 1142 (1980), and Giles Industries, Inc. v. United States,204 Ct. Cl. 202, 496 F.2d 556 (1974). However, careful acrutiny is required where compensation is paid to officer-shareholders in a closely held corporation and where it is computed on the basis of a percentage of profits in otder to determine whether the funds distributed are actually disguised dividends. (See Elliots, Inc. v. Commissioner,716 F.2d 1241 (9th Cir. 1983), rev'g. and remanding a Memorandum Opinion of this Court; Charles Schneider & Co., v. Commissioner,500 F.2d 148, 152 (8th Cir. 1974), aff'g. a Memorandum Opinion of this Court.) Respondent has disallowed only the $12,798.07 by which the compensation paid to the Spinrads during 1977 exceeds the amount computed under the compensation formula for 1977. Respondent does not contend that the compensation formula itself is unreasonable or that amounts *334 calculated thereunder are unreasonable compensation. The evidence establishes that Malcolm and Darcy Spinrad worked extremely long hours for petitioner in 1977 and in all prior years going back to the incorporation of petitioner in 1972. They were instrumental in petitioner's success, in large part because of their specialized knowledge of the employment industry, particularly as it related to the garment and textile manufacturing industries. Pursuant to the compensation formula which respondent has not questioned, Malcolm and Darcy Spinrad were in fact underpaid in prior years, and on the basis of the record herein we find that the $12,798.07 were paid in 1977 to compensate the Spinrads for reasonable compensation they earned but were not paid in prior years. Accordingly, we find for petitioner on this issue. Pursuant to the resolution of the issues set forth above, Decision will be entered under Rule 155.
Footnotes
1. The Spinrad family has resided at 509 Carsonia Avenue, Reading, Pennsylvania, since May 19, 1966. On that date they purchased and acquired title to the property as tenants by the entirety.↩
2. All Section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years at issue. Section 262↩ provides, "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."
3. The respondent has not raised as an argument for the disallowance of the claimed rental and repair expenses the applicability of the sale/leaseback or gift/leaseback cases involving family trusts, such as W.H. Armston Co. v. Commissioner,188 F.2d 531 (5th Cir. 1951), aff'g 12 T.C. 539 (1949); Carroll v. Commissioner,T.C. Memo. 1978-173; and May v. Commissioner,76 T.C. 7 (1981), among others. Based upon our resolution of this issue under sections 162 and 262↩, we do not address this argument. Furthermore, because the "leaseback" was to the corporation rather than to the individuals who sold the property to the trust, it is not clear whether the sale/leaseback cases apply. We also do not consider the issue of constructive dividends to the shareholders of petitioners because they are not parties herein.